Good morning, your honor. May it please the court, my name is Jeff Hanson. I'm here with Stephen Keninger and we represent the appellant in this case, David Georgeson. Your honors, I start out my argument to you with the recognition that my client did some things that he had no business doing and may well have been subject to a legitimate wire-fired prosecution, if not in this jurisdiction, certainly in other jurisdictions. But even though I recognize the fact that my client has done some things he should not have done, that is not to say that he is guilty of the charge that was brought in the Northern District of California. And in fact, this is a case that could have broad ramifications, it seems to me, for the general nature of wire-fraud prosecutions and debtor and creditor rights. And it is my contention, and I think it is a legitimate contention, looking at the facts of this case, that my client was charged in this indictment with taking money that the government had to and never did prove the victim in this case had a legitimate right to, and as a consequence, he is not guilty of the charge that was brought. The starting point for that analysis, of course, is the indictment itself. And I don't believe, your honors, there is any dispute here that my client was charged with conspiracy to defraud the victim, Richard Alboreno, of specific money, and that is the proceeds of the sale of Wilderness 28. Is it your argument that he, that when we talk about specific money, it has to be George Washington Greenbacks? It has to be cash? Well, that is tangible property. And when you look at the wire-fraud statute, it says money or property. And in this case, it would be my contention that those actual funds were the focus of this indictment, as opposed to, as Your Honor knows from the briefs, something that we might refer to as a chosen action, which is the ability or the attempt to try and collect on that money, which is a different species of property right, which, of course, the Supreme Court recognized in Pasquantino, which I hope to address to you in a minute. But this is clearly a case in which the government said there were proceeds from the sale, essentially cash, that went from that sale on the close of escrow into my client's hands. And so that being the focus, then there is no issue. Mr. Wright, the cash is in a bank account controlled by the title company? It is at the yes, at the starting point. And then it's transferred by check, in this case, to Steven Patton. Is the check considered cash under your construct of this? It would be, Your Honor. That particular check would be. Now, there is Ninth Circuit authority that says that money in the bank essentially creates a contract right between a depositor and the bank, and the depositor does not have specific rights to the money that's in the bank. The bank takes title to that cash. But I'm not so sure that's relevant here. And I can explain to you why, Your Honor. There has to be, in this case, well, it's highly relevant, the question of money, but I think that in my client's possession. But the government had to show an interest in that particular money by the nature of the charge. Otherwise, there was no scheme to defraud. My colleague and I could scheme all day long at this point to try and keep my retirement, for example, from Ms. Badger, but she has no interest in that property right that I have. And so it would not be a scheme to defraud that would be cognizable under the wire fraud statutes. And so there has to be an interest, the victim has in the actual monies, for there to be a scheme to defraud. The charging order didn't do that? It did not, Your Honor, for a number of different reasons. The charging order secured a right in the victim to get the membership interests of my client's rights as a corporate manager. And we have shown throughout our brief, and the first 20 pages of our brief are devoted to the fact that the government never proved that that would have resulted in any right to Mr. Albarino. That membership interest was essentially extinguished by operation of law because of the other debtor situation. So the membership interest gave Mr. Albarino no right whatsoever. Thus, the question is, what right was there? And what happened is that Mr. Albarino, according to the government, was a judgment creditor. And that, as I have said in the brief, is clearly what brings the Adler case into play. I would submit to you, I've rarely been in front of the Ninth Circuit, in which I think there was a case which is more on point. Adler clearly says that when you have an accreditor and is attempting to get money from a debtor, that creditor has no actual interest in the money that is possessed by the debtor. He has what's called a chosen action. He can sue on behalf of that, but he has no interest in that. And that's what makes Adler so important. Here is a Fourth Circuit case. Judge Ludig, I think, writes quite correctly that one has to look at two different forms of property interest that a creditor might have against an individual who they are suing. You have the right to sue, which is the chosen action, and then you might have some legitimate right in the money they actually possess. And recognizing that there was a distinction between those two rights that one might have in the property of an individual, the fact of the matter here is that the government never charged my client, never charged him, with interfering or defrauding Mr. Albarino with the of his chosen action or his ability to sue Mr. Georgeson for the money. And that's the key component. It is a fine distinction, a very fine distinction, but it is a distinction of tremendous consequence, I think, in a lot of creditor-debtor situations. Creditors would be able to secure convictions for criminal cases whenever somebody who they believed owed them money might have moved that money around under the And the minute the debtor moved that money, that we now have fraud that was cognizable under the wire fraud and mail fraud statutes. And that is a precedent I don't think that should be adopted here. Adler is right on point. And the government's effort to say that the Supreme Court last year in Pasenquinto undermined Adler is simply incorrect. All that the Supreme Court did in that case is say that there is a distinction between a chosen action and money. And so the Supreme Court not only did not undermine Adler, but in fact, we submit to you, directly reaffirmed what Judge Ludwig said in Adler, is that there are two different kinds of property. One is a chosen action and one is actually money in hand. And the government charged my client with the frauding Mr. Albarino of the money in hand and not in his chosen action. And thus they did not charge him with the they could have, they certainly could have, or certainly, back in Denver, they could have charged him with, so easily, with defrauding the court back in Denver or submitting something that was a false representation through the mails back in Denver. But the government chose to charge the case here, and they chose to charge it in a fashion that I think is controlled by the Fourth Circuit case directly, and which was not undermined by Pasenquinto. With respect to the other aspects of Judge Breyer's claim below, I think there was a misapplication of the Helmsley case that he relied on from the Second Circuit, in which he said, in essence, that what my client did was interfere with Mr. Albarino's right to collect money. And what, in essence, the district court below was saying is that my client interfered with Mr. Albarino's chosen action. And as I've said to you, that's not what my client was charged with in this situation. And so, insofar as Helmsley said there is a chosen action when one deals with tax laws, it is not a relevant case. And I don't think there's any argument you've seen in my brief at some length that Mr. Georgeson's own beliefs with regard to his rights of possession were legally incorrect and undermined by the other evidence that the government presented. And so, in light of the fact that I have relatively little time left, and would like to save some time for rebuttal, Your Honor, I simply submit to you again that this is a case in which we have a Fourth Circuit case which is directly on point, in which I would ask the Court to follow and reverse the conviction that was entered below. Roberts. Thank you, Mr. Hanson. Good morning. Good morning. May it please the Court, my name is Susan Badger, and I represent the United States in this case. On the issue of sufficiency of the evidence, whether Mr. Albarino had a property interest in a portion of the net set proceeds of the Wilderness 28 sale, the test is whether the evidence, when viewed in the light most favorable to the government, drawing all reasonable inferences in favor of the government, whether a reasonable factfinder could have found that Mr. Albarino had a property interest in at least a portion of the sale proceeds. And that's the way the indictment was drawn, that the goal of the conspiracy was to divert a portion of the proceeds. And the answer to that question is a very clear yes. The government introduced evidence in several forms that Mr. Albarino did have a legitimate property interest in at least a portion of the net proceeds. And that entitlement came from two different sources, all starting with the fact that he was a judgment creditor of Mr. Georgeson and Mr. Alex individually. He had obtained a confession of judgment from both of those gentlemen. He had filed it in California court, where both Mr. Georgeson and Mr. Alex resided. And he had also filed the judgment in Colorado, where the piece, where the Wilderness 28 property was located. But then from that, from the fact of the judgment, he derived an interest in any proceeds from the sale from two different sources, one from the fact that Mr. Georgeson and Mr. Alex were members of the LLC, the Wilderness 28 LLC, and had a membership interest and had the potential to obtain money from that interest. And then the other one was that he was a judgment creditor of Mr. Georgeson and Mr. Alex. And then the other one was that he was a judgment creditor of Mr. Georgeson and Mr. Alex. So the property interest – he had an interest in the property. You could say that he had both types of interest, both a chosen action and an interest in the money itself. And the government submits that he did have an interest in the money itself as charged in the indictment, and that we proved that at trial, and Judge Beyer was correct in finding that there was sufficient evidence of that. I would say that the Pasquantino case certainly brings into question what happened in the Fourth Circuit in Adler, where the Court sort of extracted and separated and dissected the property right and said there's a chosen action, the right to collect money, and the money itself. Well, there's also – I don't know that this was necessarily brought out in the briefing, but it seems to me that Adler was factually distinguishable as well, because there the Court did make some hay out of the fact that there was no attempt to collect from specified proceeds in that case, whereas here there is an attempt to collect specifically from the Wilderness 28 proceeds. I would agree with that, Your Honor. Excuse me. I would agree with that. I think there's two key bases on which Adler is factually distinguishable apart from the question whether its holding is undermined by Pasquantino. And the Court is absolutely right that when in Adler, the government argued three separate bases for why Printgear may have had an interest in the settlement money that had gone to Adler Industries. And on – in analyzing one of those, the Fourth Circuit found it very significant that Printgear had not initiated any type of action to ensure payment from – from Printgear. And the way that is factually distinguishable here is certainly Mr. Albarino had initiated action. He – as a matter of fact, he had done everything possible by getting the judgment, filing the judgment in California, filing it in Colorado, going to Colorado and getting the charging order, giving him a claim in any money coming to Mr. Georgeson and Mr. Alex through their membership interests. The other fact – the other way in which Adler was factually distinguishable, Your Honors, is in the relationship of the creditor-debtor in that case in here and – and the nature of the pool of money. In – in Adler, there was money – there was a pool of money that was coming to Adler Industries from the settlement with the House of Blues. In this case, we had a pool of money coming to Wilderness 28, LLC, from the sale of its property. But in Adler, the relationship – the key relationship was Printgear was a creditor of the corporation, Adler Industries. In the instant case, Mr. Alboreno, we have never claimed that he was a creditor of Wilderness 28, LLC. His relationship was with Mr. Georgeson and Mr. Alex individually. He was a creditor of those individuals. So in – in – in Adler, the question was – and the narrow ruling in that case was that an unsecured creditor of a corporation doesn't have any particular claim or a claim to any particular proceeds, especially under the circumstances where he had done nothing to ensure payment out of the proceeds. In this case, we have an entirely different situation where we have Mr. Alboreno as a judgment creditor, not of a corporation but of individuals, and a – and he has taken action to secure payment from those individuals by operation of California law. He's entitled to payment out of their personal assets. And the government did introduce evidence during the trial that money, number one, was due out of the sale to Mr. – excuse me, to Mr. Alex and to Mr. Georgeson, that they fully expected to receive some of that money because they were creditors of Wilderness 28 LLC. And, in fact, at one point – Well, that was the whole point of the fraud. Otherwise, they were trying to preserve the money for themselves. Apparently, at least that's what a jury could have believed. Right. And – and we introduced – I'm sure the court caught this, but there had been a civil suit, and Mr. Georgeson had testified during that civil suit, and that testimony was introduced during the government's case in chief here. And he said that he fully anticipated that he would receive some of the proceeds of the Wilderness 28 sale because he was a creditor of Wilderness 28, and he said, and Mr. Alboreno would get that share. And also, Mr. Alex testified at the trial that he was an investor in Wilderness 28, and he had an expectation of receiving money out of – out of the proceeds. As to the – the constructive amendment argument, Your Honors, we would submit that there was sufficient evidence – or the defense argument seems to be that there was insufficient evidence that Mr. Alboreno had a property interest in the Wilderness 29 motion. So what Judge Beyer must have been doing is constructively amending the indictment. He must have found – Well, it sort of all goes together. If – if there was money or property in the ordinary sense, and there was evidence of it, then there wasn't a constructive amendment. They sort of go together. But if there was no evidence of specific money, but only this inchoate right, then – at least that's how I understand that argument, that they are tied together. Yes. And – and as – as I have argued, there was more than sufficient evidence for a rational juror to have found that – that Mr. Alboreno did have a property interest in the actual money. And that is, in fact, what Judge Beyer found in his – in his written ruling at – on the Rule 29 motion. He framed it throughout that he – he made a finding that Mr. Alboreno had an interest in the money, not that he had an interest in or he had a chosen action. Also, Mr. Hanson raised the Helmsley case. And I would submit that the reason or the – the point of the citation to the Helmsley case by Judge Breyer in his Rule 29 ruling was nothing particularly to do – it was not that he was finding that Mr. Alboreno had a chosen action, and that's what was violated. It was for the purpose of the widely recognized principle that the success of a scheme to defraud or conspiracy is not – does not matter. In mail fraud, wire fraud, conspiracy, success does not matter. So he – he was pointing out in Helmsley, the issue there was whether Ms. Helmsley had defrauded the State of New York out of tax revenue through a conspiracy. And the Court held that it really didn't matter if at the end of the day Ms. Helmsley would have owed New York State any money. The point was that she conspired to deprive them of the State of that money. And thank you, Your Honor. Finish your sentence. Okay. Thank you. And I would submit that that's the same thing that we have here, is that the success of the scheme to defraud Mr. Alboreno is – is not something that a government had to prove, and it was not material.  If you finish the sentence. Okay. Thank you, Your Honor. Thank you. Back to Mr. Hanson. The two points I'd like to raise in rebuttal are this. First, Judge Graber, you're absolutely right. Essentially, our argument is that Judge Breyer below indicated that he believed that our client had interfered with Mr. Alboreno's right to collect money. And we said that that was not what our client was charged with, so that would be essentially adding a charge to the indictment that was not there. And that's what we meant by our argument with respect to a constructive change in the indictment. With respect to the Adler case, there seems to be, of course, some issue as to whether or not it is actually distinguishable. And I submit it is not on the relevant points. Adler, we remember, is the case in which a print gear went after a company, and the company came into – and sued them, and, in fact, perfected its right to the extent that they sued and successfully got a judgment against the company. And the company came into possession of money and then essentially did things which were much worse than Mr. Georgeson. They lied to the creditor about where the money was going, and they paid it to themselves. And then they were sued – I mean, charged with wire fraud for saying that you took this money and hid it from the creditor and thus committed wire fraud because the creditor apparently had rights to that money. And the Fourth Circuit said, no, they had no rights to that particular money. The money the print gear got is no different than the Wilderness 28 money that Mr. Georgeson got. Now, the government said that, well, that involved a company. That makes the case even less persuasive because Mr. Georgeson received the Wilderness 28 proceeds as the manager of Wilderness 28, and the government went to great lengths to prove that. And that's how they tried to charge him with defrauding the investors. So the fact that Mr. Albarino never perfected that personal judgment by securing a writ of execution, so he had absolutely no rights to the particular money at issue here. Thank you. Thank you very much, Mr. Hansen. Thank you. And, Badger, thank you as well. The case just argued is submitted.
judges: Hall, Silverman, Graber